Paid 15

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION – BAY CITY**

FILED
NOV 09 2026
U.S. DISTRICT COURT
FLINT, MICHIGAN

**ANTHONY HOTI,**

Plaintiff,

v.

**SPAULDING TOWNSHIP, MICHIGAN; ED MASTERS, individually and in his official capacity; and CHRISTINE RUDD, individually and in her official capacity,**

Defendants.

Case No.: ______

Judge: ________

Case: 1:26−cv−14270
Assigned To : Martin, Michael C.
Referral Judge: Morris, Patricia T.
Assign. Date : 11/9/2026
CMP Hoti v. Spaulding, Township of et al (tt)

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**
**42 U.S.C. § 1983 – FOURTH AND FOURTEENTH AMENDMENTS**
**DECLARATORY AND INJUNCTIVE RELIEF**

## I. INTRODUCTION

1. Plaintiff Anthony Hoti, appearing pro se, brings this action under 42 U.S.C. § 1983 against Spaulding Township, Michigan, Township Supervisor Ed Masters, and Township Secretary Christine Rudd for alleged violations of the Fourth and Fourteenth Amendments.

2. This action arises from the termination of water service to Plaintiff's rental property at 6805 East Road, Spaulding Township, Michigan, and Defendants' alleged refusal to restore service unless Plaintiff agreed to an interior property inspection.

3. Plaintiff was the property owner and registered water-account holder. He alleges that the Township terminated service without advance notice, an explanation, or a meaningful opportunity to challenge the decision.

4. Plaintiff further alleges that the Township used its control over water service to pressure him to permit an interior inspection without a warrant, voluntary consent, or an opportunity for constitutionally adequate pre-compliance review.

5. Plaintiff repeatedly sought an explanation by emailing the Township's general email address. Township officials did not respond to those emails. Plaintiff alleges that this nonresponse further deprived him of a meaningful opportunity to understand, question, or challenge the termination.

6. On October 27, 2026, Plaintiff visited Township Hall and recorded a conversation with Defendant Rudd. According to Plaintiff, Rudd stated that she and Supervisor Masters had turned off the water following a verbal complaint from the previous tenant and that service would not be restored unless Plaintiff arranged an interior inspection.

7. Plaintiff seeks relief for the alleged unreasonable inspection condition, the alleged deprivation of water service without due process, and the Township's alleged responsibility under Monell v. Department of Social Services, 436 U.S. 658 (1978).

## II. JURISDICTION

8. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the United States Constitution and 42 U.S.C. § 1983.

9. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) and (4) because Plaintiff seeks redress for alleged deprivations, under color of state law, of rights secured by the Constitution.

10. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, provides a remedy for determining the parties' rights and legal relations; Plaintiff does not rely on that Act as an independent basis for subject-matter jurisdiction.

11. To the extent any state-law claims are properly asserted, Plaintiff requests supplemental jurisdiction under 28 U.S.C. § 1367.

## III. VENUE

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred in Spaulding Township, Saginaw County, Michigan.

13. Saginaw County is within the Northern Division of the Eastern District of Michigan. 28 U.S.C. § 102(a)(2).

## IV. PARTIES

14. Plaintiff Anthony Hoti is an adult resident of Shelby Township, Michigan. He owns the residential rental property at 6805 East Road, Spaulding Township, Michigan, and was the registered water-account holder for that property when service was terminated.

15. Defendant Spaulding Township, Michigan, is a municipal governmental entity responsible for township government and matters within its jurisdiction, including its water system. Plaintiff names the Township under 42 U.S.C. § 1983 and Monell.

16. Defendant Ed Masters was, at all relevant times, the Township Supervisor and, according to Plaintiff's understanding, the Township's Chief Administrative Officer. Plaintiff alleges that Masters knew of and participated in, authorized, directed, approved, or maintained the challenged water-service decision. Plaintiff sues him individually for his alleged personal participation and officially for appropriate prospective relief.

17. Defendant Christine Rudd was, at all relevant times, employed by the Township as its secretary. Plaintiff alleges that Rudd handled Township communications and personally communicated and enforced the decision to withhold restoration unless Plaintiff agreed to an interior inspection. Plaintiff sues her individually for her alleged personal participation and officially to the extent she has authority to implement prospective relief.

## V. FACTUAL ALLEGATIONS

18. Plaintiff regained possession of the property on October 2, 2026, following the eviction of the previous tenant.

19. When Plaintiff and his wife took possession, water service was operating. They began cleaning, maintaining, and preparing the property for a new tenant.

20. By the end of October 2026, Plaintiff learned through prospective tenant Eric Shumer that water service to the property had been terminated.

21. Plaintiff was informed that the Township would not restore water service unless he scheduled an interior inspection with Peter Salo of the Saginaw Building Department.

22. Plaintiff was the registered water-account holder, and the Township had account information identifying him as the person responsible for the account.

23. The Township did not provide Plaintiff advance written notice that service would be terminated. It did not provide a written explanation of the grounds for termination or notice of a procedure to challenge the decision.

24. After learning of the shutoff, Plaintiff sent emails to the Township's general email address requesting an explanation of why water service had been terminated and seeking information about the Township's decision.

25. Township officials did not respond to those emails or provide Plaintiff an adequate explanation. Plaintiff alleges that the unanswered communications

prevented him from obtaining information or pursuing a meaningful challenge through the Township.

26. On October 27, 2026, Plaintiff personally visited Spaulding Township Hall to determine why service had been terminated. He recorded his conversation with Defendant Rudd on his cellular telephone.

27. During that conversation, Rudd stated that she and Township Supervisor Ed Masters had turned off the water following a verbal complaint allegedly made by the previous tenant.

28. Rudd further stated that the Township would not restore water service unless Plaintiff scheduled and submitted to an interior inspection of the property.

29. During portions of the recorded conversation, Rudd communicated with or spoke to Masters concerning the matter, as Plaintiff understood from the conversation and statements made by another Township clerk.

30. Plaintiff asked why the Township had not notified him before terminating service. Rudd did not provide an adequate explanation or identify a meaningful administrative procedure for challenging the termination.

31. Plaintiff objected to a warrantless interior inspection without constitutionally appropriate procedures. Plaintiff was not refusing legitimate code enforcement; he was asserting that the Township must follow applicable constitutional safeguards before entering the interior of his property.

32. Defendants continued refusing to restore water service unless Plaintiff agreed to the inspection requirement.

33. Plaintiff alleges that no water leak, water-meter malfunction, sewer-system emergency, or other immediate water-system problem was identified to him as the reason for the termination.

34. According to Rudd's recorded statements, the shutoff followed a verbal complaint from the former tenant, and restoration was conditioned on an interior inspection.

35. Plaintiff alleges that the Township's published water-system ordinance does not authorize officials to terminate or withhold water service as a means of compelling a general interior building inspection.

36. Plaintiff alleges that the property could have been prepared for rental occupancy but for the termination and continued withholding of water service. He estimates lost rental income at approximately $1,250 per month, in addition to maintenance expenses, utility expenses, and other losses.

## VI. COUNT I – FOURTH AMENDMENT
## UNREASONABLE ADMINISTRATIVE INSPECTION CONDITION
## 42 U.S.C. § 1983

37. Plaintiff incorporates paragraphs 1–36 as though fully stated here.

38. The Fourth Amendment protects against unreasonable searches by government officials and applies to state and local officials through the Fourteenth Amendment. Administrative inspections of private property are subject to Fourth Amendment protections. Camara v. Municipal Court, 387 U.S. 523 (1967); See v. City of Seattle, 387 U.S. 541 (1967).

39. After regaining possession, Plaintiff exercised possession and control over the property and maintained a reasonable expectation of privacy in its interior. He did not voluntarily consent to an interior inspection by Township officials or inspector Peter Salo.

40. Plaintiff was not presented with an administrative search warrant and was not given an opportunity to obtain pre-compliance review before a neutral decision-maker.

41. In City of Los Angeles v. Patel, 576 U.S. 409 (2015), the Supreme Court explained that, absent consent, exigent circumstances, or another applicable exception, an administrative inspection scheme must provide an opportunity for pre-compliance review.

42. Plaintiff does not challenge the Township's legitimate authority to enforce building, housing, and safety codes. He challenges the alleged use of water-service termination and continued withholding to obtain agreement to an interior inspection without constitutionally adequate safeguards.

43. Rudd stated that she and Masters had turned off the water following a verbal complaint from the previous tenant and that service would not be restored unless Plaintiff submitted to an interior inspection.

44. Plaintiff alleges that no emergency or immediate threat to public health or safety was identified that required bypassing ordinary Fourth Amendment protections. No water leak, meter malfunction, or sewer emergency was identified to him.

45. Consent to a search must be voluntary under the totality of the circumstances and cannot be the product of coercion. Schneckloth v. Bustamonte, 412 U.S. 218 (1973). Acquiescence to an asserted claim of governmental authority does not establish voluntary consent. Bumper v. North Carolina, 391 U.S. 543, 548–50 (1968).

46. Plaintiff alleges that conditioning restoration of an essential utility service on agreement to an interior inspection placed him under substantial governmental pressure and did not present a genuinely voluntary choice.

47. Plaintiff alleges that Masters participated in, authorized, directed, approved, or maintained the challenged decision, and that Rudd communicated and enforced the inspection condition. Both allegedly acted under color of state law.

48. Plaintiff acknowledges that, as of filing, he does not allege a completed physical entry into the property. He challenges the alleged coercive inspection demand and the continuing condition imposed on restoration of water service.

49. By the conduct alleged, Defendants allegedly attempted to obtain consent to an interior administrative search through coercive conditions rather than consent, a warrant, or constitutionally sufficient procedures, in violation of the Fourth Amendment.

## VII. COUNT II – FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS 42 U.S.C. § 1983

50. Plaintiff incorporates paragraphs 1–36 as though fully stated here.

51. The Fourteenth Amendment prohibits state and local officials from depriving a person of property without due process of law.

52. Plaintiff was the owner of the property and the registered water-account holder when service was terminated. He alleges that his entitlement to water service arose from his registered account, ownership, applicable Township water-service ordinances, and the Township's established procedures.

53. In Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1 (1978), the Supreme Court recognized that continued utility service may be a protected property interest where applicable law creates a legitimate entitlement to service. Plaintiff alleges that his account and the applicable Township rules created such an interest.

54. The Township did not send Plaintiff advance written notice that it intended to terminate service, explain the factual or legal grounds, or advise him of any right to protest, appeal, request a hearing, or otherwise challenge the proposed termination.

55. Plaintiff first learned of the termination through prospective tenant Eric Shumer, not through an official Township communication.

56. Plaintiff then emailed the Township's general email address to request an explanation. Township officials did not answer those emails or provide an adequate explanation. Plaintiff alleges that the failure to respond further prevented him from understanding the basis for the deprivation and identifying a meaningful way to contest it.

57. Plaintiff was not given a pre-termination hearing, an opportunity to present evidence, or an opportunity to dispute the former tenant's allegations before a neutral decision-maker.

58. When Plaintiff appeared at Township Hall on October 27, 2026, Rudd stated that the shutoff followed a verbal complaint from the former tenant and that restoration required an interior inspection. Plaintiff alleges that this did not provide a meaningful procedure to challenge the complaint or the shutoff.

59. In Memphis Light, the Supreme Court held that due process requires adequate notice of available procedures for challenging an allegedly unjustified utility termination and a meaningful opportunity to present complaints to personnel authorized to investigate them. 436 U.S. at 13–19.

60. Plaintiff also relies on Palmer v. Columbia Gas of Ohio, Inc., 479 F.2d 153 (6th Cir. 1973), concerning procedural protections before utility service is terminated, and Midkiff v. Adams County Regional Water District, 409 F.3d 758 (6th Cir. 2005), concerning the need to establish a legitimate entitlement to utility service.

61. Under Mathews v. Eldridge, 424 U.S. 319, 335 (1976), the Court considers the private interest affected, the risk of erroneous deprivation and value of additional safeguards, and the government's interests and administrative burdens.

62. Plaintiff's private interests included access to water at his rental property and his ability to clean, maintain, use, and rent it. The termination affected the service associated with his registered account and allegedly caused continuing financial injury.

63. Plaintiff alleges that the risk of erroneous deprivation was substantial because the Township acted on a verbal complaint from a former tenant without first notifying Plaintiff or allowing him to dispute the complaint. Written notice, an explanation, and an opportunity to submit objections to an authorized reviewer would have provided additional safeguards.

64. The Township has legitimate interests in maintaining its water system and enforcing building, housing, and safety requirements. Plaintiff alleges that providing notice and a meaningful opportunity to challenge a nonemergency termination would not necessarily impose an unreasonable administrative burden.

65. Plaintiff alleges that no emergency or immediate threat was identified to justify dispensing with ordinary notice and review. The Township continued withholding service after Plaintiff learned of the shutoff, emailed the general address, and personally requested an explanation.

66. Plaintiff alleges that Defendants Masters and Rudd participated in, authorized, approved, or maintained the termination or continued withholding of service, to the extent established by the evidence, and acted under color of state law.

67. By terminating and continuing to withhold water service from Plaintiff, allegedly without advance notice and a meaningful opportunity to challenge the decision, Defendants deprived Plaintiff of a protected property interest without due process of law.

## VIII. COUNT III – MUNICIPAL LIABILITY SPAULDING TOWNSHIP UNDER MONELL 42 U.S.C. § 1983

68. Plaintiff incorporates paragraphs 1–67 as though fully stated here.

69. A municipality may be liable under 42 U.S.C. § 1983 when an official policy, established custom, or decision by an official with final policymaking authority causes a constitutional deprivation. Monell v. Department of Social Services, 436 U.S. 658 (1978). A municipality is not liable merely because it employs a person who committed a constitutional violation.

70. A single decision may constitute municipal policy when made by an official possessing final policymaking authority over the particular function. Pembaur v. City of Cincinnati, 475 U.S. 469 (1986). Final policymaking authority depends on state and local law and the actual allocation of governmental authority. City of St. Louis v. Praprotnik, 485 U.S. 112 (1988).

71. Plaintiff alleges that the challenged termination and continued withholding of water service were undertaken, approved, directed, or maintained through Township decision-making authority, rather than being merely an isolated clerical act.

72. Rudd stated during the recorded conversation that she and Masters had turned off the water following a verbal complaint from the former tenant. Plaintiff alleges that this statement supports an inference that Masters personally participated in or approved the decision.

73. Plaintiff alleges that Masters, as Township Supervisor and, according to Plaintiff's understanding, Chief Administrative Officer, had administrative responsibilities relevant to Township operations and utility supervision. The scope of that authority depends on Michigan law, Township ordinances, resolutions, and any delegation of authority.

74. Plaintiff relies on MCL 42.10 to the extent Spaulding Township is a charter township. That statute addresses delegation of certain township functions, including management and supervision of township utilities, and provides that functions not delegated are exercised by the township supervisor.

75. Plaintiff alleges that Spaulding Township Code § 51.03(A) places operation, maintenance, alteration, repair, and management of the water system under the supervision and control of the Township Board. Plaintiff further alleges that § 51.07(C) authorizes discontinuation for premises with water charges more than 30 days delinquent, subject to that section.

76. Plaintiff alleges that the stated reason for the shutoff was not delinquent water charges or a water-system emergency, but a verbal complaint from the former tenant, and that restoration was conditioned on an interior inspection.

77. Plaintiff further alleges that § 51.07(F) addresses access for meter readings and inspection of water meters or associated piping, but does not by itself resolve whether the separate general interior inspection demanded here was constitutionally permissible.

78. Plaintiff alleges, in the alternative, that Masters possessed final policymaking authority over the particular water-service decision; that the Township Board approved or ratified the decision; or that the conduct resulted from an official policy, established custom, or administrative practice concerning water shutoffs and inspections. The precise allocation of authority and any approval or ratification are matters for discovery.

79. Plaintiff alleges that the Township maintained or permitted procedures under which water service could be terminated and withheld without adequate advance notice or a meaningful opportunity for review, and under which restoration could be conditioned on agreement to an interior inspection without constitutionally adequate safeguards.

80. Plaintiff alleges that the municipal decision, policy, custom, or practice was the moving force behind the alleged Fourth and Fourteenth Amendment deprivations and the resulting injuries.

81. Plaintiff does not seek to impose municipal liability solely on a theory of respondeat superior. He seeks to hold the Township directly liable only if an official policy, custom, or final-policymaker decision is shown to have caused the constitutional violations.

## IX. INJURIES AND DAMAGES

82. As a direct and proximate result of the alleged conduct, Plaintiff has suffered and continues to suffer financial injury.

83. Plaintiff estimates lost rental income at approximately $1,250 per month and also claims maintenance expenses, utility expenses, and other documented costs associated with the vacant property.

84. Plaintiff seeks compensation for damages proven to have been caused by the alleged constitutional violations and reserves the right to supplement the amount as records and evidence become available.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anthony Hoti respectfully requests that the Court:

A. Enter judgment in Plaintiff's favor and against the appropriate Defendants;

B. Declare, to the extent established by the evidence, that Defendants' actions violated Plaintiff's rights under the Fourth and Fourteenth Amendments;

C. Declare that Spaulding Township is liable under Monell if an official policy, custom, or final-policymaker decision caused the constitutional violations;

D. Enter appropriate preliminary and permanent injunctive relief requiring restoration of water service to 6805 East Road, subject to lawful and constitutionally permissible requirements;

E. Prohibit Defendants from conditioning restoration of water service on Plaintiff's consent to an unconstitutional warrantless interior inspection;

F. Require constitutionally adequate notice and a meaningful opportunity for review before future governmental action deprives Plaintiff of a protected property interest, as appropriate;

G. Award compensatory damages for proven lost rental income, maintenance expenses, utility expenses, and other legally recoverable injuries;

H. Award punitive damages against Masters and Rudd in their individual capacities only where legally available and supported by the required evidence;

I. Award allowable costs and attorney fees under 42 U.S.C. § 1988, if applicable; and

J. Grant such other and further relief as the Court deems just and proper.

## XI. REQUEST FOR PRELIMINARY INJUNCTION

85. Plaintiff requests leave to seek preliminary injunctive relief under Federal Rule of Civil Procedure 65, including an order requiring restoration of water service while this action is pending, subject to lawful and constitutionally permissible conditions.

86. Plaintiff understands that preliminary relief requires a separate showing concerning likelihood of success on the merits, likelihood of irreparable injury, the balance of harms, and the public interest. Plaintiff may support a separate motion with declarations, documentary evidence, and the recorded conversation.

## XII. RULE 11 CERTIFICATION AND SIGNATURE

87. I, Anthony Hoti, certify under Federal Rule of Civil Procedure 11 that, to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (a) this Complaint is not presented for an

improper purpose; (b) the legal claims are warranted by existing law or a nonfrivolous argument for changing the law; (c) the factual allegations have evidentiary support or, if specifically identified, likely will have support after a reasonable opportunity for investigation or discovery; and (d) the filing otherwise complies with Rule 11.

88. Plaintiff understands that he must promptly notify the Clerk of Court of any change in mailing address while this action is pending.

Respectfully submitted,

________________________________________

Anthony Hoti

Plaintiff, Pro Se

Date: November 6, 2026

Mailing Address: 6707 Little Turkey Run

Shelby Township, MI 48317

Telephone: 586-252-3570

Email: prolinepainting11@gmail.com